**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NAOMI SPEAKS, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 23-487 |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| ELWYN INDUSTRIES, INC. | : | |
| Defendants. | : | |

McHUGH, J.                                                      November 25, 2024

### MEMORANDUM

Plaintiff Naomi Speaks fell while walking down a stairway in her role as a security contractor at the United States Custom House. Upon landing, she noticed a damp floor mat by the door at the bottom of the stairs and brought a case that seeks to leverage that one fact into the existence of a dangerous condition for which the United States and its custodial contractor are responsible. But there is no other evidence in the record that would support liability, and Plaintiff can shed no light on what caused her to fall. Given that record, I am obligated to enter summary judgment in favor of Defendants.

### I.      FACTUAL BACKGROUND

The United States Custom House is a federal property built in 1934 and owned by the General Services Administration ("GSA"). Falter Dep. 48:23-49:6, 51:7-13, ECF 26-11. It is home to several federal offices. Speaks Dep. 36:4-10, ECF 26-2. At all relevant times, the federal government contracted with Elwyn Industries, Inc. ("Elwyn"), a private company, to provide custodial services at the Custom House. *See* GSA Letter to Elwyn, ECF 26-10; Heller Dep. Ex. 2 at 17 ("Elwyn Contract"), ECF 26-5. Elwyn's contracted services include sweeping, mopping, general cleaning, and snow removal. *See* Elwyn Contract. Elwyn staff work weekdays from 8:30

am to 5:30 pm.   Heller Dep. 45:16-46:9, 61:10-12.   Among other duties, Elwyn staff are responsible for cleaning all stairwells and inspecting entryway door mats.  *Id.* 129:18-131:15. These door mats are also vacuumed daily and replaced as needed.  *Id*.; *id.* 59:18-60:3; *id.* Ex. 2 at 17.

In addition to routine inspection and cleaning performed by Elwyn, anyone who works in the Custom House can report specific conditions that need custodial or maintenance work.  The Custom House is patrolled 24 hours a day by a "rover" security guard who walks throughout the building, including all stairwells.  Falter Dep. 101:20-106:15. If the rover detects any dangerous or hazardous conditions, they call a central dispatcher to report the condition.  *Id*.  Additionally, there is a GSA help desk number shared with Custom House staff to report any maintenance or custodial needs, such as flooded floors.  *Id*. 71:1-72:18; Heller Dep. 35:9-36:5. Reported concerns get forwarded to the appropriate entity.  *Id*.  For example, custodial needs are forwarded to Elwyn. *Id.*  Federal custodial contractors must have a way to receive custodial service requests 24/7, and Elwyn staff are expected to respond to any service requests during their normal work hours.  Heller Dep. Ex. 1 at C.7, ECF 26-4.

The federal government also contracts with Triple Canopy Inc. to provide security services at the Custom House.  Falter Dep. 86:1-87:6, 107:12-17.  Naomi Speaks was a Triple Canopy security officer and had started working for Triple Canopy in February 2021.  Speaks Dep. 76:12-23.  Ms. Speaks was employed as a 'flex guard,' switching between buildings based on staffing needs.  *Id.* 27:2-28:18.  About five times a month, Speaks worked at the Custom House.  *Id*.  Each time she worked at the Custom House, Ms. Speaks took approximately three breaks per shift to use the same restroom inside.  *Id*. 40:6-24.

The morning of January 18, 2022, Ms. Speaks was stationed at Guardhouse 5 outside of the employee entrance of the Custom House. *Id.* 22:18-26:4. Government weather records indicate that the day before the accident there was some precipitation in Philadelphia. *See* Fleisher Report at 1-2 (citing www.weather.gov/wrh/climate), ECF 25-9. Although Ms. Speaks saw some snow on top of and next to vehicles in the Custom House lot the morning of January 18, she does not recall seeing any snow on the sidewalk near the employee entrance. Speaks Dep. 35:5-21. Speaks arrived at the Guardhouse slightly before 6:00 am, saw between ten and fifteen employees use the staff entrance, and at around 7:50 am, went inside to use the women's restroom up a flight of stairs located right next to the employee entrance. *Id*. 26:11-21, 30:15-24, 35:18-23, 39:9-40:4. Speaks didn't notice anything different about the stairs on that day. *Id*. 40:6-41:4. When walking back down the stairway to return to the Guardhouse, Speaks tripped off one of the last two steps, falling to the ground and hitting her head against the employee entrance door. *Id*. 51:4-11. Speaks landed on the entrance mat at the base of the stairs, and noticed it was wet. *Id.* 44:1-12. Sadly, it appears that this fall caused several serious injuries. *Id*. 117:2-19.

On January 18, 2022, Elwyn did not receive any calls about a wet floor near the staff entrance by Guardhouse 5. Heller Dep. 39:10-12, 128:8-129:17. In fact, during the entire month of January 2022, none of the 29 custodial service calls Elwyn received related to stairway conditions. Heller Dep. Ex. 6 at 8, ECF 26-9.

Ms. Speaks has sued the United States and Elwyn, alleging that her fall was caused by dangerous conditions in the stairwell.

## II.    STANDARD OF REVIEW

This Motion is governed by the well-established standard for summary judgment set forth in Federal Rule of Civil Procedure 56(a), as described by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.    DISCUSSION

### A.  Count I: Federal Tort Claims Act

Ms. Speaks first brings a negligence action against the United States pursuant to the Federal Tort Claims Act, which is governed by the law of the state in which the alleged tortious conduct occurred.  28 U.S.C. § 1346(b)(1).  Pennsylvania law requires a plaintiff in a negligence suit to demonstrate "(1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff." *Farabaugh v. Pa. Turnpike Comm'n*, 911 A.2d 1264, 1272-73 (Pa. 2006).

In Pennsylvania, possessors of land have a duty to protect invitees from foreseeable harm. *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983).  For conditions on land that are known or discoverable, a possessor is only liable for harm to an invitee if the possessor "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger."  *Id.* at 123 (adopting Restatement (Second) of Torts Section 343).

The threshold question is whether there is sufficient evidence on the record to conclude that a dangerous condition existed.  A plaintiff's "ability to produce evidence of a dangerous or hazardous condition is the crux of a premises liability action involving a slip-and-fall." *Daniels v.*

*Sears & Sears Roebucks & Co.*, 2016 WL 521205, at *3 (E.D. Pa. Feb. 10, 2016) (citing Restatement (Second) of Torts § 343).  The complaint alleges two dangerous conditions: that the stairs were and wet and that they were poorly maintained.  Alhough Plaintiff argues that it was both factors working in tandem that caused the fall,[1] I will also assess whether evidence on the record would allow a reasonable fact finder  to conclude that either factor alone could constitute a dangerous condition.

      *1.  Plaintiff has not shown that the United States breached a duty.*

      a.  <u>There is no evidence on the record that the stairs were wet.</u>

      The record does not contain evidence that would allow a factfinder to conclude that the stairs were wet.  Ms. Speaks had used these stairs about 30 times per month since starting at Elwyn. When walking up and down the stairs on January 18, Speaks didn't notice anything different about the stairs.  Speaks Dep. 40:6- 41:4. Specifically, Ms. Speaks did not see any liquid on the steps or anywhere else inside.  *Id*. 44:13-15.  Her initial text to her supervisor describing the fall did not mention any liquid.  Def. U.S.A.'s Mot. Summ. J. Ex. F, ECF 25-7 ("I fell at customs. Tripped coming down the stairs.").  Her written incident report that day also did not mention any liquid. Speaks Dep. Ex. 2 ("I tripped on the last step and hit my head. . ."), *id*. 16:16-18:14.  A photo taken by Ms. Speaks of the stairway and mat later that day show no sign of any moisture.  Speaks Dep. Ex.s 7, 9, ECF 25-2; *id*. 37:1-13, 53:1-56:24.  And Ms. Speaks' November 2022 deposition about this accident did not mention any liquid on the stairs.  Speaks Dep. Ex. 1.  Furthermore, Ms. Speaks admits that she does not know whether slippery conditions – let alone wet stairs – caused her fall. Speaks Dep. at 42:1-3.

---

[1] Pl. Res. at 1, ECF 27 ("As a result of lingering winter conditions which resulted from prior snowfall, Ms. Speaks had a terrible fall while coming down an outdated staircase"); *id.* at 6 ("the incident [was] caused by moisture on the ancient and slippery stairs.").

The only liquid Ms. Speaks noticed was moisture on the mat directly inside the staff entrance. She didn't realize that the mat was wet when she first entered the building and walked across it. Only after falling directly onto the mat did Speaks realize that it was damp. *Id.* 40:6-24, 41:1-4, 43:21-44:115. It bears mention that her fall occurred as she came back down the steps after her break. Any moisture transferred from the mat to her shoes would be significantly dissipated in the interim. The only suggestion that the stairs were wet originates in the report generated by David Fleisher, P.E. Fleisher Report, ECF 25-9. It refers to a "saturated" mat and "wet stairwell conditions." *Id.* at 8. But this statement is pure conjecture, as Mr. Fleisher cites nothing in the record suggesting that the mat was "saturated" or that there was moisture on the stairs, and contemporaneous photos show no such conditions.

Because the record is devoid of evidence that the stairs were wet, no reasonable factfinder could find a dangerous condition of the stairs due to wetness at the time of the Plaintiff's accident. *See, e.g., Blunt v. Ritz-Carlton Hotel Co., LLC*, 2017 WL 1079970, at *3 (E.D. Pa. Mar. 21, 2017) (holding that no reasonable jury could find that there was liquid on stairs – despite plaintiff's observation that it was raining and the stairs were 'slippery' – because she didn't see any moisture on the steps).

    b. Plaintiff has not shown that the stairs were dangerously worn.

Plaintiff also alleges that the worn and smooth condition of the staircase contributed to the fall. Under Pennsylvania law, normal wear on stairs does not establish negligence. "The mere fact that steps [] might be slightly worn or smooth, of itself is not negligence." *Adams v. J.C. Penney Co.*, 192 A.2d 218, 220 (Pa. 1963). In a series of cases, Pennsylvania courts have rejected the view that minor defects suffice to establish breach of duty. For example, in *Adams* the Court concluded that evidence a wooden step was worn down one-fourth of an inch beneath a metal strip

did not suffice to prove negligence. *Id.*; *see also Radies v. Reading Liederkranz German Singing & Sport Soc.*, 178 A.2d 789, 791 (Pa. Super. 1962) (affirming a judgment not withstanding the verdict because evidence that steps were worn three-eighths of an inch and smoothed did not establish possessor negligence); *Chapman v. Clothier*, 118 A. 356 (Pa. 1922) (concluding that a one-sixteenth inch depression in marble stairs does not constitute a defective condition). To establish that stairs were worn to a point of a breach of duty, a plaintiff must introduce sufficient evidence of some defect presenting a hazard. *Copelan v. Stanley Co. of Am.,* 17 A.2d 659, 661 (Pa. Super. 1941) (entering a judgment notwithstanding the verdict because Plaintiff's dependence on an architect's "vague and indefinite testimony" that a step was "worn badly" instead of introducing "actual measurements" did not present sufficient evidence to raise a question for the jury on negligence).

Here, Ms. Speaks had previously walked on the steps in question approximately 30 times a month for 11 months but did not testify that they were worn or dangerous, or that any particular characteristic about them caused her fall. Photos of the stairs do not show noticeable depressions, lips, or significant wear other than burnishing on the tip of the nosing. Furthermore, Plaintiff provides no objective measurements establishing that the stairs were more than lightly worn, despite having a civil engineer assess them. Notably, there were no physical measurements of any kind, let alone an analysis of slip resistance or the co-efficient of friction. A conclusory statement that the staircase was "outdated" does not convey an engineering opinion, nor does the artful phrase "ancient and slippery."

Plaintiff argues that the building, constructed in 1934, does not meet current recommended standards for stairwells. But possessors have no duty to retrofit stairs to bring them into compliance with current codes. *See Dilauro v. One Bala Avenue Assoc.,* 615 A.2d 90 (Pa. Super.

1992) (finding that defendants are not required to retrofit stairs to comply with current building codes); *Kiehner v. Sch. Dist. of Philadelphia*, 712 A.2d 830, 832 (Pa. Cmwlth. 1998) (same).  To hold otherwise would make property owners subject to newly created liabilities every time a code is amended.  Absent an identifiable hazardous condition, departure from modern building codes alone cannot establish negligence.

Based on this record, no reasonable fact finder could conclude that the United States breached a duty they owed to Ms. Speaks and other invitees.

> *2.  Plaintiff has not shown that the alleged breach caused her fall.*

Even if Ms. Speaks could establish that the United States breached a duty they owed her, "to establish liability in an action of this nature, it is necessary for the plaintiff to prove what *actually* caused the accident, not what *might* possibly have caused it."  *DuBois v. City of Wilkes-Barre*, 189 A.2d 166, 167 (Pa. 1963) (emphasis in original); *Hopkins v. E. I. Du Pont de Nemours & Co.*, 212 F.3d 623, 626 (3d Cir. 1954) ("Where plaintiff thus leaves the jury to guess as between suggested causes, there can be no recovery"); *Butts v. Weisz*, 2010 WL 703238, at *8 (W.D. Pa. Feb. 25, 2010), *aff'd*, 410 F.App'x 470 (3d Cir. 2010) (granting summary judgment to defendants in a slip and fall case where plaintiff failed to provide evidence that the alleged breach of duty caused decedent's fall).

Pennsylvania courts consistently reject trip-and-fall claims where the plaintiff cannot identify a specific cause of her fall, but merely identifies possible causes.[2]  Here, Ms. Speaks

---

[2] *See, e.g., Freund v. Hyman*, 103 A.2d 658, 659 (Pa. 1954) (upholding an order of nonsuit where plaintiff knew where she fell and a photograph showed a raised piece of sidewalk in that area, but where there was no evidence that the raised step actually caused her fall); *Dimino v. Wal-Mart Stores, Inc.*, 83 Pa. D & C.4th 169 (Pa. C.C.P. 2007) (granting summary judgment to defendant where the plaintiff testified that she did not know what caused her slip-and-fall but relied on the fact that an oily substance was on her shoe afterwards); *Miller v. Twin Arches Ltd.*, 74 Pa. D & C.4th 449 (Pa. C.C.P. 2005) (granting summary judgment to defendant where plaintiff could identified two possible causes of slip-and-fall but did not

cannot identify what caused her to fall.  Speaks Dep. at 42:1-3 ("Q: [] Do you know what caused

you to trip? A. No.").  Speaks did not see any liquid in the stairwell.  *Id.* 44:13-15.  Speaks' initial

text to her supervisor and subsequent report describing the fall did not identify a cause of the fall

or note any liquid near the stairs.  Def. U.S.A. Mot. Summ. J. at Ex. F ("I fell at customs. *Tripped*

coming down the stairs.") (emphasis added); Speaks Dep. Ex. 2 ("I tripped on the last step and hit

my head. . .").  These statements – closest in time to her fall – also indicate that Ms. Speaks *tripped*

down the stairs, rather than *slipped* on the stairs.  As the Supreme Court of Pennsylvania has noted,

"[t]he sensation of tripping is entirely different from that of slipping."  *Radies*, 178 A.2d at 791.

Furthermore, in her initial reports and depositions, Speaks does not claim that the stairs themselves

were slippery, worn, or had any other defect.  Her expert's opinion that the fall was caused by a

combination of wet conditions and worn stairs lack evidentiary support.

        The mere fact that an accident occurs is not evidence of negligence.  *Adams*, 192 A.2d at

220.  Instead, "the burden rests upon the plaintiff to produce evidence from which a reasonable

inference arises that the defendant was negligent and that such negligence was the proximate cause

of the accident."  *Id*.  Because Plaintiff's evidence is not sufficient to raise a genuine issue of

material fact with respect to causation under Pennsylvania law, summary judgment would be

warranted even if a dangerous condition existed.

---

present any evidence as to which, if either, was the actual cause); *McNeil v. Ginsburg*, 28 Pa. D & C.4th
531 (Pa. C.C.P. 1996), *aff'd*, 683 A.2d 319 (Pa. Super. 1996) (upholding summary judgment to defendant
where plaintiff was unaware of actual cause of slip-and-fall and circumstances indicated numerous possible
causes); *Flocco v. City of Philadelphia*, 29 Phila. Co. Rptr. 1 (Pa. C.C.P. 1994) (granting summary judgment
for defendant where plaintiff showed that accident site was strewn with rocks and debris but presented no
evidence that these conditions actually caused plaintiff to fall).

**B. Count II: Elwyn Industries, Inc. State Tort Claims**

Ms. Speaks also brings a negligence action against Elwyn Industries, Inc., GSA's contractor for custodial services. Under Pennsylvania law, a plaintiff in a negligence suit must demonstrate (1) a duty of care; (2) a breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual harm to the plaintiff. *Farabaugh*, 911 A.2d at 1272-73. To establish negligence, the burden of proof is on Ms. Speaks to show that the condition of the stairs in question presented an unreasonable risk of harm to her and that Defendants knew, or by exercise of reasonable care could have known, of the danger and failed to correct it. *See Martino v. Great Atlantic & Pacific Tea Company*, 213 A.2d 608, 610 (Pa. 1965); *Kardibin v. Associated Hardware*, 426 A.2d 649, 652 (Pa. Super. 1981).

Elwyn is a contractor which provides janitorial services at the Custom House, as set forth in its federal contract. Pennsylvania law has established that a contracting party has two duties: a contractual duty pursuant to the agreement *and* a legal duty to act without negligence towards both the other contracting party and third parties. *See Prost v. Caldwell Store, Inc.*, 187 A.2d 273, 277 (Pa. 1963); *Bisson v. John B. Kelly, Inc.*, 170 A. 139, 143 (Pa. 1934); *St. Clair v. B & L Paving Co.*, 411 A.2d 525, 526 (Pa. Super. 1979). This legal duty is a duty "to take thought and have a care lest his action result in injuries to others." *Prost*, 187 A.2d at 276. As part of this duty, a contractor who performs inspections can be liable to third persons injured by a contractor's failure to identify defective or dangerous conditions discoverable by reasonable inspection. *Evans v. Otis Elevator Co*., 168 A.2d 573, 576 (1961).

In this case, there is no dispute that Elwyn had a contractual duty to maintain and replace floor mats as needed, clean up reported moisture, and clean the stairwells each day. Falter Dep. 89:7-11; Elwyn Contract. Further, Elwyn had a legal duty to carry out its janitorial services

without negligence and to address dangerous conditions discoverable by reasonable inspection. But the record fails to introduce any evidence that would allow a jury to conclude that Elwyn breached either their contractual or legal duties.

Ms. Speaks alleges that "Elwyn in particular failed to ensure that a safe and dry floormat was in place on the day of the incident so that the floormat could absorb the water being tracked in from wintery conditions just outside." Pl. Res. at 6, ECF 27. However, as detailed above, Plaintiff has failed to establish either that the floor mat was saturated or that moisture was present on the stairs. And even if the mat was saturated, Plaintiff has failed to introduce any evidence establishing that Elwyn acted negligently and knew or should have known about the wet mat. Elwyn inspected the stairway and vacuumed the mat every day. Heller Dep. 129:18-131:15, 59:18-60:3, 134:5-13, 148:11-150:15. The fall took place before Elwyn work hours, so no Elwyn employees were at the Custom House during the time of the accident. Elwyn did not receive any calls that morning about a wet mat or floor by the staff entrance by Guardhouse 5. *Id*. 39:10-12, 128:8-129:17.[3] Additionally, the very purpose of entryway mats is to absorb water. The evidence before the Court related to wetness – testimony that the mat felt damp on contact – in no way establishes that Elwyn breached their contractual or legal duties.

Elwyn also had a contractual duty to inspect the stairwells, and a legal duty to identify defective or dangerous conditions discoverable by reasonable inspection. Ms. Speaks alleges that the stairs were dangerously worn. Yet, as described above, Speaks failed to introduce sufficient evidence to allow a jury to conclude that the stairs had become worn to the extent that they were

---

[3] In fact, Elwyn did not receive *any* reports related to unsafe conditions in the stairways during the entire month of January. Heller Dep., Ex. 6 at 8, ECF 26-9.

dangerous, let alone that any such hazard should have been discovered by proper inspection by Elwyn.

Finally, as detailed above, even if Elwyn did breach their duty in inspecting the stairs or maintaining the mat, there is no evidence in the record that the either wet or worn stairs were causally related to the fall.  In short, the same lack of evidence warranting judgment in favor of the United States compels judgment in favor of Elwyn.

## IV.    CONCLUSION

For the reasons set forth above, both Defendants' Motions for Summary Judgment must be granted.  An appropriate order follows.


                                                   /s/ Gerald Austin McHugh
                                                  United States District Judge